IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **EMILIANO LOPEZ,**<br><br>                                    Petitioner,<br><br>        v.<br><br>**CALIFORNIA,**<br><br>                                    Respondent. | 1:14-cv-00504 MJS HC<br><br>**ORDER SUMMARILY DISMISSING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT AND CLOSE CASE**<br><br>**ORDER DECLINING ISSUANCE OF CERTIFICATE OF APPEALABILITY** |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(c)(1), Petitioner has consented to the jurisdiction of the United States Magistrate Judge.  Local Rule 305(b).

**I.     DISCUSSION**

**A.     Procedural Grounds for Summary Dismissal**

Rule 4 of the Rules Governing Section 2254 Cases provides in pertinent part:

> If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner.

The Advisory Committee Notes to Rule 8 indicate that the court may dismiss a petition for writ of habeas corpus, either on its own motion under Rule 4, pursuant to the respondent's motion to dismiss, or after an answer to the petition has been filed.  See

1   Herbst v. Cook, 260 F.3d 1039 (9th Cir. 2001). Allegations in a petition that are vague,

2   conclusory, or palpably incredible are subject to summary dismissal. Hendricks v.

3   Vasquez, 908 F.2d 490, 491 (9th Cir. 1990). A petition for habeas corpus should not be

4   dismissed without leave to amend unless it appears that no tenable claim for relief can

5   be pleaded were such leave granted.  Jarvis v. Nelson, 440 F.2d 13, 14 (9th Cir. 1971).

6       **B.    Factual Summary**

7       On April 9, 2014, Petitioner filed the instant petition for writ of habeas corpus.

8   challenging the July 26, 2011 decision of the Board of Parole Hearings ("Board") finding

9   him unsuitable for parole. (Pet., ECF No. 1.) Petitioner claims the Board and the

10  California courts unreasonably determined that there was some evidence he posed a

11  current risk of danger to the public if released. In addition, Petitioner raises several

12  related claims including: (1) that the parole rejection violated the terms of his plea

13  agreement, (2) that he was provided ineffective assistance of counsel at the parole

14  hearing, (3) and that the use of Marsy's Law was a violation of the Ex Post Facto clause

15  in that it extended the duration of his parole denial.

16      **C.    Federal Review of State Parole Decisions**

17      Because the petition was filed after April 24, 1996, the effective date of the

18  Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies in

19  this proceeding. Lindh v. Murphy, 521 U.S. 320, 327, 117 S. Ct. 2059, 138 L. Ed. 2d 481

20  (1997); Furman v. Wood, 190 F.3d 1002, 1004 (9th Cir. 1999).

21      A district court may entertain a petition for a writ of habeas corpus by a person in

22  custody pursuant to the judgment of a state court only on the ground that the custody is

23  in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§

24  2254(a), 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7, 120 S. Ct. 1495, 146 L.

25  Ed. 2d 389 (2000); Wilson v. Corcoran, 131 S.Ct. 13, 16, 178 L. Ed. 2d 276 (2010).

26      The Supreme Court has characterized as reasonable the decision of the Court of

27  Appeals for the Ninth Circuit that California law creates a liberty interest in parole

28  protected by the Fourteenth Amendment Due Process Clause, which in turn requires fair

1   procedures with respect to the liberty interest. Swarthout v. Cooke, 131 S.Ct. 859, 861-

2   62, 178 L. Ed. 2d 732 (2011).

3        However, the procedures required for a parole determination are the minimal

4   requirements set forth in Greenholtz v. Inmates of Neb. Penal and Correctional Complex,

5   442 U.S. 1, 12, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979). Swarthout, 131 S.Ct. at 862. In

6   Swarthout, the Court rejected inmates' claims that they were denied a liberty interest

7   because there was an absence of "some evidence" to support the decision to deny

8   parole. The Court stated:

9        There is no right under the Federal Constitution to be conditionally
         released before the expiration of a valid sentence, and the States are
10       under no duty to offer parole to their prisoners. (Citation omitted.) When,
         however, a State creates a liberty interest, the Due Process Clause
11       requires fair procedures for its vindication-and federal courts will review
         the application of those constitutionally required procedures. In the context
12       of parole, we have held that the procedures required are minimal. In
         Greenholtz, we found that a prisoner subject to a parole statute similar to
13       California's received adequate process when he was allowed an
         opportunity to be heard and was provided a statement of the reasons why
14       parole was denied. (Citation omitted.)

15   Swarthout, 131 S.Ct. at 862. The Court concluded that the petitioners had received the

16   process that was due as follows:

17       They were allowed to speak at their parole hearings and to contest the
         evidence against them, were afforded access to their records in advance,
18       and were notified as to the reasons why parole was denied....

19       That should have been the beginning and the end of the federal habeas
         courts' inquiry into whether [the petitioners] received due process.
20

21   Swarthout, 131 S.Ct. at 862. The Court in Swarthout expressly noted that California's

22   "some evidence" rule is not a substantive federal requirement, and correct application of

23   California's "some evidence" standard is not required by the Federal Due Process

24   Clause. Id. at 862-63. This is true regardless whether Petitioner is challenging a decision

25   by the Board to deny parole or the Governor's reversal of a parole grant. Swarthout, 131

26   S. Ct. at 860-61; Styre v. Adams, 645 F.3d 1106, 1108 (9th Cir.  2011) ("[w]e now hold

27   that the Due Process Clause does not require that the Governor hold a second suitability

28   hearing before reversing a parole decision.").

3

1        Here, Petitioner argues that the Board improperly relied on evidence relating to

2 Petitioner's past criminal history. (Pet. at 34-43.) In so arguing, Petitioner asks this Court

3 to engage in the very type of analysis foreclosed by <u>Swarthout</u>. In this regard, Petitioner

4 does not state facts that point to a real possibility of constitutional error or that otherwise

5 would entitle Petitioner to habeas relief because California's "some evidence"

6 requirement is not a substantive federal requirement. Review of the record for "some

7 evidence" to support the denial of parole is not within the scope of this Court's habeas

8 review under 28 U.S.C. § 2254. The Court concludes that Petitioner's claim concerning

9 the evidence supporting the unsuitability finding should be dismissed.

10        Although Petitioner asserts that his right to due process of law was violated by the

11 Board's decision, Petitioner does not set forth any specific facts concerning his

12 attendance at the parole hearing, his opportunity to be heard, or his receipt of a

13 statement of reasons for the parole decision. Petitioner has not alleged facts pointing to

14 a real possibility of a violation of the minimal requirements of due process set forth in

15 <u>Greenholtz</u>, 442 U.S. 1.

16        A petition for habeas corpus should not be dismissed without leave to amend

17 unless it appears that no tenable claim for relief can be pleaded were such leave

18 granted. <u>Jarvis</u>, 440 F.2d at 14. Here, the Court concludes that it would be futile to grant

19 Petitioner leave to amend his first claim.

20        **D.**     <u>**Plea Violation**</u>

21        Petitioner claims that the Board's July 26, 2011 decision denying him parole

22 violated his plea agreement. (Pet. at 18-21, 28-30.)

23        A criminal defendant has a due process right to enforce the terms of his plea

24 agreement. Promises from the prosecution in a plea agreement must be fulfilled if they

25 are significant inducements to enter into a plea. <u>Santobello v. New York</u>, 404 U.S. 257,

26 262, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971); <u>Buckley v. Terhune</u>, 441 F.3d 688, 694 (9th

27 Cir. 2006). Plea agreements are contractual in nature and are measured by contract law

28 standards. <u>United States v. De la Fuente</u>, 8 F.3d 1333, 1337 (9th Cir. 1993). In

1  construing a plea agreement, a court must determine what the defendant reasonably

2  believed to be the terms of the plea agreement at the time of the plea. United States v.

3  Franco-Lopez, 312 F.3d 984, 989 (9th Cir. 2002).

4      The construction of a state court plea agreement is a matter of state law, and

5  federal courts will defer to a state court's reasonable construction of a plea agreement.

6  Ricketts v. Adamson, 483 U.S. 1, 6 n.3, 107 S. Ct. 2680, 97 L. Ed. 2d 1 (1987); Buckley,

7  441 F.3d at 695. In California, a negotiated plea agreement is a form of contract and is

8  interpreted according to general contract principles and according to the same rules as

9  other contracts. Buckley, 441 F.3d at 695.

10     In California, the plain meaning of an agreement's language must first be

11  considered. If the language is ambiguous, it must be interpreted by ascertaining the

12  objectively reasonable expectations of the promisee at the time the contract was made.

13  Id. If ambiguity remains after a court considers the objective manifestations of the

14  parties' intent, the language of the contract should be interpreted most strongly against

15  the party who caused the uncertainty to exist, or in favor of the defendant. Id. at 695-96.

16     Here, Petitioner fails to allege facts that would entitle him to habeas relief. His

17  own petition states that he was sentenced to fifteen years-to-life. Petitioner does not

18  show that his plea agreement included any term or condition concerning parole, the

19  parole period, Petitioner's eligibility for parole, or release on parole. Petitioner argues

20  that the use of the language "50 percent minimum" somehow meant that he was

21  guaranteed release after serving half of the 15 year term. (Id. at 28.) However, the

22  language by its plain meaning only described the minimum time required to be served,

23  and did not limit the maximum amount of time that may be served.

24     Petitioner asserts that his continued confinement is inconsistent with his

25  expectation of any benefit from his plea bargain. Petitioner claims his expectation was

26  that he was to be paroled after the completion of his minimum term. (Pet. at 29-30.)

27  However, the discussion of Petitioner's prison term at sentencing clearly shows that

28  parole was only a possibility, rather than a guarantee. This is consistent with California

1   law, pursuant to which it is established that an indeterminate life sentence is in legal

2   effect a sentence for the maximum term of life. People v. Dyer, 269 Cal.App.2d 209, 214,

3   74 Cal. Rptr. 764 (1969).

4           Generally, a convicted person serving an indeterminate life term in state prison is

5   not entitled to release on parole until he is found suitable for such release by the Board

6   of Parole Hearings (previously, the Board of Prison Terms). Cal. Pen. Code § 3041(b);

7   Cal. Code of Regs., tit. 15, § 2402(a).  Under California's Determinate Sentencing Law,

8   an inmate such as Petitioner who is serving an indeterminate sentence for murder may

9   serve up to life in prison, but he does not become eligible for parole consideration until

10  the minimum term of confinement is served. In re Dannenberg, 34 Cal.4th 1061, 1078,

11  23 Cal. Rptr. 3d 417, 104 P.3d 783 (2005). The actual confinement period of a life

12  prisoner is determined by an executive parole agency. Id. (citing Cal. Pen. Code § 3040).

13          Here, there is no basis for a conclusion that at the time the plea was entered,

14  objective manifestations of intent reflected that Petitioner reasonably understood that he

15  was entitled to release on parole at any particular point in his indeterminate sentence.

16  The facts do not warrant a conclusion that the indeterminate sentence imposed was

17  anything other than a sentence for the maximum term of life, with a possibility of release

18  on parole after seven and a half years if Petitioner were found suitable for such release.

19          Any rejection by state courts of Petitioner's claim was not contrary to, or an

20  unreasonable application of, clearly established Supreme Court precedent, and it was

21  not based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d).

22  Petitioner has not shown that a state court failed to apply clearly established precedent

23  of the United States Supreme Court. Further, it would have been reasonable for the

24  state court to have determined that Petitioner had simply shown that he bargained for a

25  term of fifteen years to life (notwithstanding his credit earning capacity to shorten the

26  sentence) with only the possibility of release on parole. See Ricketts v. Adamson, 483

27  U.S. 1, 6 n.3, 107 S. Ct. 2680, 97 L. Ed. 2d 1 (1987). To the extent Petitioner relies on

28  state regulations or statutes that permit discretionary release after a shorter period of

1  time than Petitioner has been confined, Petitioner's claim is based on the application of

2  state law and thus does not entitle Petitioner to relief. It does not appear that Petitioner

3  could allege a tenable due process claim concerning his plea if leave to amend were

4  granted. Accordingly, Petitioner's due process claim concerning his plea bargain is

5  dismissed without leave to amend.

6       **E.    Ineffective Assistance of Counsel at Parole Board Determination**

7       Petitioner claims he was denied his Sixth Amendment right to effective assistance

8  of counsel at his parole hearing. (Pet. at 30-33.)

9       Petitioner's claim is without merit. In the first place, there is no clearly established

10  right to counsel at parole suitability hearings. In Morrissey v. Brewer, 408 U.S. 471

11  (1972), the United States Supreme Court delineated the minimum standards of due

12  process that must be provided parolees during parole revocation hearings. The Court did

13  not consider, however, whether parolees have a right to counsel at those hearings. See

14  id. at 489. Thereafter, in Gagnon v. Scarpelli, 411 U.S. 778 (1973), the Supreme Court

15  discussed whether the state is under a constitutional duty to provide appointed counsel

16  in probation or parole revocation hearings. In so doing, the Supreme Court emphasized

17  the essentially non-adversary nature of the hearings, the non-judicial character of the

18  administrative decision-making body, and the likelihood that the proceedings would be

19  significantly altered by the introduction of counsel. See id. at 788-89. Rather than adopt

20  a per se rule, the Supreme Court adopted a case-by-case approach:

21            We thus find no justification for a new inflexible constitutional rule
   with respect to the requirement of counsel. We think, rather, that the
22  decision as to the need for counsel must be made on a case-by-case
   basis in the exercise of a sound discretion by the state authority charged
23  with responsibility for administering the probation and parole system.
   Although the presence and participation of counsel will probably be both
24  undesirable and constitutionally unnecessary in most revocation hearings,
   there will remain certain cases in which fundamental fairness -- the
25  touchstone of due process -- will require that the State provide at its
   expense counsel for indigent probationers or parolees.
26

27  Id. at 790.

28       Before Morrissey and Gagnon were decided, the United States Court of Appeal

1   for the Ninth Circuit, in <u>Dorado v. Kerr</u>, 454 F.2d 892, 897 (9th Cir. 1972), held that due

2   process does not entitle California state prisoners to counsel at parole hearings. The

3   United States District Court for the Northern District of California has held that <u>Dorado</u>

4   accurately reflects the underlying concerns and objectives expressed by the Supreme

5   Court in <u>Morrissey</u> and <u>Gagnon</u>, and denied the right to counsel on such grounds. <u>See</u>

6   <u>Burgener v. California Adult Authority</u>, 407 F. Supp. 555, 559 (N.D. Cal. 1976); <u>Leque v.</u>

7   <u>Brown</u>, 2007 U.S. Dist. LEXIS 89980 (N.D. Cal. 2007); <u>Taylor v. Ayers</u>, 2009 U.S. Dist.

8   LEXIS 57753 (N.D. Cal 2009); <u>Troxell v. Horel</u>, 2009 U.S. Dist. LEXIS 122257 (N.D. Cal.

9   2009). This Court agrees and concludes there is no clearly established right to counsel

10  at parole suitability hearings. Petitioner was not constitutionally entitled to any attorney at

11  his parole hearings. Accordingly, this claim must be dismissed.

12        **F.**    <u>**Marsy's Law Claim**</u>

13        Finally, petitioner claims that application of Marsy's Law - which was enacted after

14  he was convicted - violates his rights under the Ex Post Facto Clause. Petitioner is a

15  member of the class of prisoners litigating this same claim in <u>Gilman v. Brown, et al.</u>, E.

16  Dist. Cal. no. 2:05-CV-0830-LKK-CKD, 2014 U.S. Dist. LEXIS 26386. [1] Because

17  petitioner's interests in this claim are being adequately represented by the class in

18  Gilman, petitioner should not be allowed to proceed with a separate action raising the

19  same claim. <u>See Colt v. Swarthout</u>, 2011 U.S. Dist. LEXIS 114478, 2011 WL 4710804,

20  at *2-3 (E.D. Cal. 2011); <u>Rivers v. Swarthout</u>, 2011 U.S. Dist. LEXIS 143355, 2011 WL

21  6293756, at pages 2-3 (E.D. Cal. 2011). Petitioner's Marsy's Law claim should be

22  dismissed.

23        **G.**    <u>**Certificate of Appealability**</u>

24        A state prisoner seeking a writ of habeas corpus has no absolute entitlement to

25
26        [1] The court may take judicial notice pursuant to Federal Rule of Evidence 201 of matters of public record. <u>See</u> <u>U.S. v. 14.02 Acres of Land</u>, 530 F.3d 883, 894 (9th Cir. 2008). Thus, this court may take judicial notice of state court records, <u>see</u> <u>Kasey v. Molybdenum Corp. of America</u>, 336 F.2d 560, 563 (9th Cir. 1964), as well as its own records, <u>see</u> <u>Chandler v. U.S.</u>, 378 F.2d 906, 909 (9th Cir. 1967).

27        The Gilman class is defined as all California prisoners, such as petitioner, serving life sentences

28  with the possibility for parole for crimes occurring before November 4, 2008.

1   appeal a district court's denial of his petition, and an appeal is only allowed in certain

2   circumstances. Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003). The controlling statute

3   in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which

4   provides as follows:

5       (a) In a habeas corpus proceeding or a proceeding under section 2255
        before a district judge, the final order shall be subject to review, on appeal,
6       by the court of appeals for the circuit in which the proceeding is held.

7       (b) There shall be no right of appeal from a final order in a proceeding to
        test the validity of a warrant to remove to another district or place for
8       commitment or trial a person charged with a criminal offense against the
        United States, or to test the validity of such person's detention pending
9       removal proceedings.

10      (c)    (1) Unless a circuit justice or judge issues a certificate of
        appealability, an appeal may not be taken to the court of appeals from–
11

12          (A) the final order in a habeas corpus
            proceeding in which the detention complained
13          of arises out of process issued by a State
            court; or
14
            (B) the final order in a proceeding under
15          section 2255.

16      (2) A certificate of appealability may issue under paragraph
        (1) only if the applicant has made a substantial showing of
17      the denial of a constitutional right.

18      (3) The certificate of appealability under paragraph (1) shall
        indicate which specific issue or issues satisfy the showing
19      required by paragraph (2).

20   If a court denies a petitioner's petition, the court may only issue a certificate of

21   appealability "if jurists of reason could disagree with the district court's resolution of his

22   constitutional claims or that jurists could conclude the issues presented are adequate to

23   deserve encouragement to proceed further." Miller-El, 537 U.S. at 327; Slack v.

24   McDaniel, 529 U.S. 473, 484 (2000).  While the petitioner is not required to prove the

25   merits of his case, he must demonstrate "something more than the absence of frivolity or

26   the existence of mere good faith on his . . . part." Miller-El, 537 U.S. at 338.

27      In the present case, the Court finds that no reasonable jurist would find the

28   Court's determination that Petitioner is not entitled to federal habeas corpus relief wrong

9

or debatable, nor would a reasonable jurist find Petitioner deserving of encouragement to proceed further.  Petitioner has not made the required substantial showing of the denial of a constitutional right.  Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

## II.    ORDER

Accordingly, IT IS HEREBY ORDERED:

1) The petition for writ of habeas corpus is DENIED;

2) The Clerk of Court is DIRECTED to enter judgment and close the case; and

3) The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:   May 7, 2014                          /s/ *Michael J. Seng*

UNITED STATES MAGISTRATE JUDGE